## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

VALANTIN MESIDOR,

     Plaintiff,                        Case No.: 1:26-cv-20723

v.

TRANSUNION LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.;
EQUIFAX INFORMATION
SERVICES LLC; COLUMBIA DEBT
RECOVERY LLC d/b/a GENESIS;
JETSTREAM FEDERAL CREDIT UNION;
PENNSYLVANIA STATE EMPLOYEES
CREDIT UNION; GS BANK; and
COLLEGE AVENUE STUDENT LOANS,

     Defendants.                       **JURY TRIAL DEMAND**

_____/

## COMPLAINT

Plaintiff, VALANTIN MESIDOR (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, TRANSUNION LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; COLUMBIA DEBT RECOVERY LLC d/b/a GENESIS; JETSTREAM FEDERAL CREDIT UNION; PENNSYLVANIA STATE EMPLOYEES CREDIT UNION; GS BANK; and COLLEGE AVENUE STUDENT LOANS, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., and respectfully alleges as follows:

## PRELIMINARY STATEMENT

This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein each Defendant, and its representatives, attempted to collect consumer debts from Plaintiff on a accounts that resulted from identity theft—using inaccurate, misleading, and negative credit reporting in an unlawful attempt to collect the alleged debt from Plaintiff. Despite Plaintiff's repeated meritorious disputes of the accounts' credit reporting, each Defendant continued to report an account balance as past due on Plaintiff's consumer credit reports to the substantial detriment of Plaintiff's credit rating, loss of employment opportunities, and in violation of the FCRA.

## JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District and/or the events giving rise to this action occurred in this District.

## PARTIES

3.      Plaintiff, Valantin Mesidor is an individual and natural person residing in Miami-Dade County, Florida,  and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

4.      Defendant TransUnion LLC ("TransUnion") is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), with its principal place of business in Chicago, Illinois.

5.      Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), with its principal place of business in Costa Mesa, California.

6.      Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), with its principal place of business in Atlanta, Georgia.

7.      Defendant Columbia Debt Recovery LLC d/b/a Genesis ("CDR/Genesis") is a person that furnishes information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2, with its principal place of business at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208.

8.      Defendant Jetstream Federal Credit Union ("Jetstream") is a person that furnishes information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2, with its principal place of business at 15420 NW 77th Court, Miami Lakes, FL 33016.

9.      Defendant Pennsylvania State Employees Credit Union ("PSECU") is a person that furnishes information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2, with its principal place of business at 1500 Elmerton Avenue, Harrisburg, PA 17110-9214.

10.     Defendant GS Bank ("GS Bank") is a person that furnishes information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2, with its principal place of business at 200 W St., New York, NY 10282.

11.     Defendant College Avenue Student Loans ("College Avenue") is a person that furnishes information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2, registered as a Delaware corporation and conducting business in Florida.

12.      Defendants Jetstream, PSECU, GS Bank, and College Avenue are collectively referred to as the "Furnisher Defendants."

## I.   FACTUAL ALLEGATIONS

### A. Background and Identity Theft

13. Plaintiff is a victim of identity theft perpetrated by his brother which has resulted in numerous fraudulent accounts being opened in Plaintiff's name without his knowledge or consent.

14. Plaintiff's personal information was sold to other unknown third parties, therefore, the effects of the identity theft remain ongoing.

15. Plaintiff first discovered that he was a victim of identity theft in 2021; however, the extent of the theft and related fraudulent accounts continue to surface.

16. As a result of this identity theft, Plaintiff's personal and financial information has been compromised and continues to be misused to open fraudulent credit accounts.

17. Despite Plaintiff's proactive efforts to dispute inaccurate information, request credit freezes, and place fraud alerts, Defendants have persistently failed to comply with their obligations under the FCRA.

**B. Timeline of Disputes and Responses**

18. In August 2024, Plaintiff, an ongoing identity theft victim, reviewed his credit reports.

19. During Plaintiff's review he noted several accounts in his credit report that he did not recognize and which Plaintiff knew did not belong to him.

20. On August 28, 2024, Plaintiff sent validation letters separately to all Furnisher Defendants regarding fraudulent accounts appearing on his credit reports.

21. On September 5, 2024, First Collection Services at the request and direction of Jetstream, , responded requesting a police report, a copy of Plaintiff's driver's license, and proof of residency in 2022 and 2023. .

22. On September 9, 2024, Plaintiff sent his first formal FCRA dispute letters to all three consumer reporting agency defendants (the "First Dispute Letter").[1] The First Dispute Letter included notarized affidavits of the perpetrator of the fraud, as well as FTC Identity Theft Affidavits. A true and correct copy of the First Dispute Letter without attachments is attached hereto as Exhibit A.

23. Equifax, Experian, and Trans Union received Plaintiff's First Dispute Letter on September 11, 2024.

24. Equifax, Experian, and Trans Union communicated Plaintiff's First Disputes to each furnisher listed therein.

25. Plaintiff's First Dispute Letter was communicated to each of the Furnisher Defendants by Equifax, Experian and Trans Union.

26. On September 19, 2024, Equifax responded to Plaintiff's First Dispute Letter (hereinafter "Equifax's September 2024 Response") by requesting additional identification and refusing to block the disputed information despite clear evidence of identity theft. A true and correct copy of Equifax's September 2024 Response is attached hereto as Exhibit B.

27. On September 20, 2024, TransUnion responded to Plaintiff's First Dispute Letter (hereinafter "Trans Union's September 2024 Response") claiming PSECU accounts were "verified" without proper dispute notations, stated other

---

[1] The letter is dated August 28, 2024.

accounts were deleted without specifying which accounts, and refused to implement a credit block. A true and correct copy of Trans Union's September 2024 Response is attached hereto as Exhibit C.

28. On September 24, 2024, Experian responded to Plaintiff's First Dispute Letter (hereinafter "Experian's September 2024 Response") denying Plaintiff's block request and reporting that disputes regarding Jetstream, Columbia Debt Recovery, and three PSECU accounts were still "pending." The Columbia Debt Recovery/Mosaic account was deleted. A true and correct copy of Experian's September 2024 Response is attached hereto as Exhibit D.

29. Experian's refusal to block Plaintiff's information due to identity theft confused Plaintiff as he had provided FTC reports, copies of his identification and social security number, and a bank statement.

30. On October 1, 2024, Columbia Debt Recovery/Mosaic provided a response to Plaintiff's validation request, but did nothing to address Plaintiff's disputes of identity theft and that the debt was fraudulent.

31. On October 2, 2024, Equifax confirmed its receipt of Plaintiff's identity theft complaint and provided additional information on identity theft. A true and correct copy of Equifax's communication is attached hereto as Exhibit E.

32. On October 4, 2024, TransUnion provided supplemental reports to Plaintiff regarding three PSECU accounts (hereinafter the "Trans Union October

2024 Response"). A true and correct copy of the Trans Union October 2024 Response is attached hereto as Exhibit F.

33.On October 10, 2024, Experian responded to Plaintiff (hereinafter the "Experian October 2024 Response") and reported that PSECU and Jetstream accounts were "verified" while the Columbia Debt Recovery/Mosaic account was removed. A true and correct copy of the Experian October 2024 Response is attached hereto as Exhibit G.

34.On February 11, 2025, Plaintiff sent a second set of dispute letters (hereinafter the "Second Dispute Letters") separately to each Trans Union, Experian, and Equifax, again disputing the multiple fraudulent accounts previously verified as accurate on his credit reports. A true and correct copy of the Second Dispute Letter is attached hereto as Composite Exhibit H.

35.Specifically, the Second Dispute Letters disputed

a. TransUnion's continued reporting of the Columbia Debt Recovery, Jetstream, and multiple PSECU tradelines;

b. Equifax's continued reporting of the Columbia Debt Recovery, Jetstream, multiple PSECU tradelines, and disputing Equifax's refusal to freeze or block Plaintiff's credit file; and

    c. Experian's continued reporting of the PSECU and Jetstream accounts, and disputing Experian's refusal to freeze or block Plaintiff's credit file.

36. Equifax, Experian, and Trans Union received Plaintiff's Second Dispute Letters and communicated Plaintiff's Second Dispute Letters to each furnisher listed therein.

37. On March 7, 2025, having received no response from Trans Union, Plaintiff reviewed his TransUnion credit report. The report showed the disputed accounts as follows:

    a. College Avenue with a balance owed of $20,343, and a balance 120 days past due in the amount of $2,762. There was no reference to Plaintiff's disputes.

    b. GS Bank with a balance owed and past due of $3,826, and charged off. There was no referenced to Plaintiff's disputes.

    c. three separate PSECU accounts with balances owed and past due, with a status of charged off and respossession, and there was no reference to any of Plaintiff's disputes.

    d. Genesis with an original creditor of Mosaic in the amount of $268.

38.On March 21, 2025, Plaintiff reviewed his Equifax credit report. Equifax finally added a fraud alert to Plaintiff's credit report; however, Equifax continued to report the

    a.  College Avenue account with a balance owed of $20,343, and 120 days past due as of January 2025 with a past due balance of $2,762

    b.  GS Bank account with a balance owed and past due balance of $3,826 as a charge of as of January 2025

    c.  Neither of the accounts made reference to Plaintiff's disputes.

39.On August 8, 2025, Plaintiff communicated yet another set of dispute letters (the "Third Dispute Letters") separately to each Trans Union, Experian, and Equifax. A true and correct copy of the Third Dispute Letters are attached hereto as Composite Exhibit I.

40.The Third Dispute Letters disputed a GS Bank, Navy FCU, and Amsher Collection tradelines on his credit reports. The Third Dispute Letters further contained additional information such as updated FTC Identity Theft Affidavits and another dispute of the  continued reporting of the College Avenue tradeline.

41.Equifax, Experian, and Trans Union received Plaintiff's Third Dispute Letters and communicated Plaintiff's Third Disputes to each furnisher listed therein.

42. On August 11, 2025, Experian responded to Plaintiff's Third Dispute Letter again indicating that it was refusing Plaintiff's request for a credit block.

43. On August 28, 2025, Experian further responded to Plaintiff's Third Dispute Letter, verifying the GS Bank, Navy FCU and College Avenue tradelines as accurate. Experian further indicated that the Amsher Collection account was deleted, but later indicated that the account would remain.

44. Throughout August 2025, Plaintiff received various credit reporting update alerts electronically, each reporting that the remaining disputed accounts were verified as accurate and would continue to impact Plaintiff's credit score, including an alleged repossession.

45. On September 17, 2025, Trans Union responded to Plaintiff's Second Dispute Letter verifying the Genesis tradeline as accurate. Trans Union did not respond to any of the other disputed accounts listed in Plaintiff's Second Dispute Letter.

## C. Specific Account Violations and Furnishers

46. The fraudulent accounts include credit transactions and one vehicle repossession, all opened without Plaintiff's knowledge or consent as a result of identity theft.

47. Despite at least three written disputes and multiple online disputes by Plaintiff regarding the fraudulent accounts, the accounts continue to report as follows:

   a. The Columbia Debt Recovery/Mosaic was deleted and is now being reported as Gensis with an original creditor listed as Mosaic, and balance owed of $268.

   b. The Jetstream Federal Credit Union was eventually deleted.

   c. The three tradelines once listed as PSECU were deleted and reinserted, or alternatively were delicately listed now as PA State Employees Credit Union, with a balance owed and past due of $11,871, without any reference to Plaintiff's disputes;

   d. The GS Bank account is still being reported with a balance owed and past due in the amount of $3,826, and without any reference to Plaintiff's disputes.

   e. The College Avenue Student as account is still being reported with a balance owed of $20,470, a past due balance of $3,160, and charged off. There was no reference to Plaintiff's disputes.

48. Despite clear evidence of identity theft and repeated disputes, Defendants have failed to properly investigate, correct, or remove inaccurate information from Plaintiff's credit reports.

49. Defendants' failures have resulted in continued damage to Plaintiff's creditworthiness and reputation.

50. Plaintiff retained Rebbecca Goodall Law, P.A. and Ziegler Diamon Law for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

51. As a direct result of the inaccurate and misleading reporting of the herein referenced accounts on Plaintiff's credit reports, Plaintiff has been unable to obtain financing or credit.

52. Plaintiff has been denied for credit no less than five times, including for the purchase of a vehicle, by AmeriCredit, AT&T, Global Lending Solutions, and Ally Bank.

53. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite his dispute efforts, Plaintiff must endure the erroneous and incorrect reporting of the Account, as well as each Defendants' continued unlawful continued reporting.

54. Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would instead pay higher interest rates in the event he could obtain financing.  In fact, Plaintiff suffered additional actual

damages in the form of damage to his credit reputation, higher credit costs, other additional costs and fees, and less access to credit.

55. The FCRA, Sections 1681n or 1681o, or both, provide for the award of between $100 up to $1,000 in statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Columbia Debt Recovery LLC d/b/a Genesis; Jetstream Federal Credit Union; Pennsylvania State Employees Credit Union; Gs Bank; College Avenue Student Loans; Equifax; Experian; and/or TransUnion.

56. At all material times herein, it would have been possible for Defendants to avoid violating the terms of the FCRA.

### COUNT I - Violation of 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
(Against TransUnion, Experian, and Equifax)

Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

57. Plaintiff is an "identity theft victim" as defined by 15 U.S.C. § 1681a(q), and submitted identity theft reports within the meaning of § 1681a(q)(4), including FTC Identity Theft Affidavits and sworn statements identifying the fraudulent accounts.

58.     On or about September 9, 2024, Plaintiff submitted written disputes to TransUnion, Experian, and Equifax identifying specific accounts as resulting from identity theft and requesting that the information be blocked pursuant to § 1681c-2(a).

59.     The disputes included, at minimum:

     a.  FTC Identity Theft Affidavits;

     b.  Notarized affidavits identifying the perpetrator; and

     c.  Sufficient identifying information to establish Plaintiff's identity.

60.     Each CRA received Plaintiff's identity theft reports on or about September 11, 2024.

61.     Pursuant to § 1681c-2(a), each CRA was required to block the reporting of the identified information no later than four (4) business days after receipt.

62.     None of the CRA Defendants blocked the disputed accounts within the statutory timeframe.

63.     Instead, Equifax, Experian, and TransUnion refused to block the information, asserting requirements not imposed by statute, including demands for:

     a.  Police reports;

     b.  Additional documentation beyond that required by § 1681c-2; and

c. Re-submission of identity documents already provided.

64.   The FCRA does not require a police report as a condition precedent to a block under § 1681c-2, and Defendants' imposition of such requirements violated the plain language of the statute.

65.   Despite repeated disputes in February 2025 and August 2025, including updated FTC Identity Theft Affidavits, Defendants continued to refuse to block the same identity-theft-related tradelines.

66.   Defendants' conduct reflects a systemic policy or practice of refusing to timely block identity theft information and imposing extra-statutory requirements on identity theft victims.

67.   Defendants' violations were willful or, at minimum, negligent, entitling Plaintiff to damages under 15 U.S.C. §§ 1681n and/or 1681o.

**COUNT II - Violation of 15 U.S.C. § 1681c-1**
**<u>Failure to Place and Maintain Fraud Alerts</u>**
(Against TransUnion, Experian, and Equifax)

Plaintiff realleges paragraphs 1 through 67.

68.   Plaintiff requested the placement of fraud alerts on his consumer reports in connection with his identity theft disputes beginning in September 2024.

69.   Despite notice of Plaintiff's identity theft status, Equifax, Experian, and TransUnion failed to timely place fraud alerts as required by § 1681c-1(a).

70.     Equifax did not place a fraud alert until March 21, 2025, more than six months after Plaintiff's initial request and identity theft documentation.

71.     Experian and TransUnion failed to consistently place or maintain fraud alerts despite repeated notice of ongoing identity theft.

72.     Defendants' failures were not isolated errors but part of a systemic breakdown in fraud alert handling for known identity theft victims.

73.     As a direct result, creditors continued to access Plaintiff's reports without enhanced verification, contributing to credit denials and further harm.

**COUNT III - Violation of 15 U.S.C. § 1681i(a)**
**Failure to Conduct a Reasonable Reinvestigation**
(Against TransUnion, Experian, and Equifax)

Plaintiff realleges paragraphs 1 through 73.

74.     Plaintiff disputed the accuracy of multiple tradelines on at least three separate occasions: September 2024, February 2025, and August 2025.

75.     The disputed information included accounts that:

   a.  Resulted from identity theft;

   b.  Were duplicated across furnishers or tradeline names;

   c.  Reflected balances, charge-offs, and a repossession not attributable to Plaintiff.

76.     Defendants failed to conduct reasonable reinvestigations because they:

a. Relied exclusively on furnisher "verification" despite clear fraud indicators;

b. Failed to reconcile duplicate or re-named tradelines (e.g., PSECU / PA State Employees; Genesis / Mosaic);

c. Continued reporting a repossession without matching SSN or DOB; and

d. Failed to correct or delete information after prior deletions.

77.    Defendants' reinvestigations were objectively unreasonable given:

a. Plaintiff's documented identity theft history;

b. Prior deletions of the same accounts;

c. FTC Identity Theft Affidavits; and

d. Repeated disputes raising the same inaccuracies.

78.    The continued reporting was inaccurate and misleading, and Defendants' failures were a substantial factor in Plaintiff's credit denials, including denials by AmeriCredit, AT&T, Global Lending Solutions, and Ally Bank.

79.    Defendants violated § 1681i(a) willfully or negligently.

**COUNT IV - Violation of 15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible**
**Accuracy**
(Against TransUnion, Experian, and Equifax)

Plaintiff realleges paragraphs 1 through 79.

80.     Defendants reported information that was inaccurate or materially misleading, including:

a.      Fraudulent accounts attributed to Plaintiff;

b.  Duplicate tradelines reflecting the same alleged debt;

c.  A repossession without matching identifying information; and

d.  Balances and charge-offs resulting from identity theft.

81.     Defendants failed to follow reasonable procedures by:

a.  Continuing to rely on furnisher verification despite fraud indicators;

b.  Failing to flag or suppress identity-theft-related accounts;

c.  Allowing reinsertions without certification of accuracy; and

d.  Failing to ensure account ownership matched Plaintiff's identifying data.

82.     These failures occurred before and after Plaintiff's disputes, demonstrating systemic procedural deficiencies rather than isolated mistakes.

83.     Plaintiff suffered actual damages and credit denials as a direct result of Defendants' violations.

**COUNT V - Violation of 15 U.S.C. § 1681i(a)(5)**
**Unlawful Reinsertion of Previously Deleted Information**
(Against TransUnion, Experian, and Equifax)

Plaintiff realleges paragraphs 1 through 83.

84.    One or more of the disputed accounts—including the Genesis/Mosaic tradeline and PSECU accounts—were previously deleted from Plaintiff's credit reports.

85.    The same accounts were later reinserted or re-reported under modified names without:

    a.  Certification of accuracy from the furnisher; or

    b.  Written notice to Plaintiff within five (5) business days.

86.    In the alternative, Defendants permitted duplicate tradelines to exist, deleted one version, and left the remaining inaccurate tradeline reporting.

87.    Defendants violated § 1681i(a)(5) by reinserting or permitting continued reporting without statutory safeguards.

## COUNT VI - Violation of 15 U.S.C. § 1681s-2(b) Failure to Conduct a Reasonable Investigation
### (Against Columbia Debt Recovery LLC d/b/a Genesis)

Plaintiff realleges paragraphs 1 through 87.

88.    TransUnion, Experian, and Equifax notified Genesis of Plaintiff's disputes beginning on or about September 11, 2024.

89.    Genesis received notice that the account resulted from identity theft and that Plaintiff denied ownership.

90.    Despite notice, Genesis:

    a.  Verified the account as accurate;

b.  Failed to review identity theft documentation; and

c.  Continued furnishing the account under a modified tradeline name.

91.     Genesis's investigation was objectively unreasonable given:

a.  Prior deletion of the same account;

b.  FTC Identity Theft Affidavits; and

c.  Lack of any evidence tying the account to Plaintiff.

92.     Genesis violated § 1681s-2(b) willfully or negligently.

93.     Defendants' violations were willful, entitling Plaintiff to statutory damages up to $1,000 per violation pursuant to 15 U.S.C. § 1681n.

94.     Alternatively, Defendants' violations were negligent, entitling Plaintiff to actual damages pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

**A.** Enter judgment in favor of Plaintiff and against all Defendants;

**B.** Award Plaintiff actual damages in the amount to be determined at trial;

**C.** Award Plaintiff statutory damages up to $1,000 as provided by 15 U.S.C. §§ 1681n and 1681o;

**D.** Award Plaintiff punitive damages where appropriate;

**E.** Enter declaratory relief that Defendants' actions violated Plaintiff's rights under the FCRA;

**G.** Award Plaintiff reasonable attorney's fees and costs as provided by 15 U.S.C. §§ 1681n and 1681o;

**H.** Grant such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

REBBECCA GOODALL LAW, PA

/s/ Rebbecca A. Goodall
Rebbecca A. Goodall, Esq.
Florida Bar No.:  0115344
Rebbecca@rgoodalllaw.com
P.O. Box 1304
Elfers, FL 34680
(813) 438-3695
Attorney for Plaintiff